### THE EXCELSIOR *v.* THE BRUCE AND THE HAMILTON FISH.

*(District Court, E. D. Pennsylvania. November 9, 1888.)*

COLLISION—STEAM AND SAIL—CHANGE OF TACK.
    Where a sailing vessel upon a particular tack finds that she is likely to collide with a vessel propelled by steam, and at or about the time of the collision endeavors to avoid it by changing her course, she can recover if a collision results, even though the particular change of course was ill-advised.

In Admiralty. Libel for damages.

The bark Excelsior, being injured in a collision with the tug Bruce and ship Hamilton Fish, brought a libel against them for damages. The facts appear in the opinion.

*Charles Gibbons, Jr., Curtis Tilton,* and *John F. Lewis,* for libelant.
*Henry R. Edmunds,* for the Hamilton Fish.
*Alfred Driver* and *J. Warren Coulston,* for the tug Bruce.

BUTLER, J. On the 14th of May, 1887, the libelant, laden with sugar, and bound for Philadelphia, was beating up the Delaware river against a north-east wind, in charge of a competent pilot. Between the hours of 2 and 3 P. M., when off Reedy Island piers, near the east side of the channel, she turned about, and tacked westward, across the river. At this time the Bruce, having the Hamilton Fish in tow astern, was from one to two miles below, steaming up the western side of the channel. The vessels held their respective courses until the Bruce was about passing the bark's bows, so close as to render collision with the Fish probable, if not inevitable, when the bark, to avoid the danger, changed her helm, and sought to go about. She succeeded in turning her head up to the wind, but immediately fell back, and came into collision with the ship. Her witnesses attribute the failure to get about to a sudden change of wind. The bark's libel charges the tug with negligence in failing to go astern, and to reduce her speed; and charges the ship Fish with negligence in failing to cast off or cut her hawser, when the danger

became apparent, to observe the rules of the road, and to exercise proper seamanship. The Bruce's answer says the collision was caused by the bark's attempt to go about where she did, instead of turning southward, and going astern of the tow. The Fish's answer is the same. It is important to observe that neither answer suggests that the bark should have gone further eastward before tacking, as was urged on the argument, and that the Bruce says the bark had run "to the eastern shore" before turning. The allegation that the bark should have gone about earlier, or should have turned southward, and endeavored to go astern of the tow, finds no support in the facts of the case. Her tack was not run out by several hundred yards. She had a right, therefore, to hold her course, and it was her duty to do so until threatened with collision; and then it was proper to make the effort which she did to avoid the danger. Whether the course adopted was the best is unimportant. It is plain that she thought it was. If she was mistaken, however, she is not chargeable on that account. I do not see any evidence whatever of fault on her part. If she should have gone further eastward before changing tack, the respondents are not in position to assert it. Was the tug in fault? I believe she was. It was her plain duty to go astern of the bark. There was nothing, I think, in the way of her doing so. It seems quite evident that she desired to avoid loss of time by change of course, and therefore took the risk of crossing the bark's bows, hoping to get by in time. She took the chances, and must bear the consequences. Had there been anything in the way of turning slightly eastward to go astern, when she saw the bark turn westward, she should have slowed down, and stopped, if necessary. The use of her anchors and those of the ship would have enabled her to do this with safety. I do not think a case is made out against the ship. She cannot properly be charged with fault in failing to cut her hawser, or throw it off. She was justified in relying on the tug to tow her past the bark in safety, and in believing that she would go astern of the bark if necessary, until it was too late for effective action on her part; nor do I see any evidence to justify the charge, under the circumstances, that the ship failed to observe the rules of the road, or to exercise proper seamanship.